IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | CASE NO: 3:05-cr-172-WHA |
| | ) | |
| CAMION Q. HUGULEY | ) | |

**DEFENDANT'S MEMORANDUM ON SENTENCING OPTIONS**

**COMES NOW** the Defendant, Camion Q. Huguley ("Mr. Huguley"), by and through undersigned counsel and states the following in response to the Court's request for a memorandum on sentencing options available to the Court in this case.[1]

**Facts**

1.     Mr. Huguley was born on February 21, 1987. On March 9, 2005, seventeen days after his eighteenth birthday, he was arrested in Lafayette, Alabama by housing authority police officers and was found to be in possession of 0.67 gram of marijuana. This indictment followed, on August 3, 2005.

2.     On November 28, 2005, Mr. Huguley appeared before this Court and entered a plea of guilty to Misdemeanor Possession of Marijuana, in violation of 18 U.S.C. §844(a). At the plea colloquy, this Court directed Mr. Huguley to complete drug treatment, complete his GED, and maintain employment.

---

[1]Undersigned counsel notes that Mr. Huguley continues to argue that the sentence of probation, as proposed in the plea agreement in this case, is still an appropriate punishment for Mr. Huguley. However, the Court has directed counsel to submit a memorandum on sentencing options available to the Court and this is submitted in response to that direction.

3. Mr. Huguley successfully passed his GED examinations and obtained his GED certificate on or about January 24, 2006.

4. Mr. Huguley successfully completed the Bridge in-patient drug rehabilitation program for adolescents in Gadsden, Alabama, on or about January 26, 2006.

5. On February 15, 2006, a Petition to Revoke Pre-trial Supervision was filed by Mr. Huguley's pretrial release officer, and a warrant for the arrest of Mr. Huguley was issued by this Court, based on Mr. Huguley's failure to comply with the direction of his pretrial officer on February 14, to come in and meet with that officer.

6. On February 28, 2006, Mr. Huguley voluntarily surrendered to the custody of the United States Marshal Service.[2] On information and belief, Mr. Huguley has tested positive for marijuana use at least three times while on pretrial release.

7. On March 1, 2006, Mr. Huguley's sentencing hearing was continued until March 15, 2006 upon a grant of undersigned counsel's oral motion. Also on March 1, 2006, the arrest warrant for Mr. Huguley was returned executed.

**Sentencing Options**

Since the applicable guideline range is in Zone A of the Sentencing Table, the Court has the option under the advisory U.S. Sentencing Guidelines, of imposing (1) a sentence of from one to six months imprisonment, followed by no more than one year of Supervised Release supervision; (2) a sentence of probation; or (3) a sentence of probation with conditions, including electronic monitoring or community confinement or such other conditions as required by the Court. When the

---

[2]The fact that Mr. Huguley self-surrendered was not known to defense counsel at the time of the court hearing on March 1st, and thus was not brought to the attention of the Court or the United States by defense counsel at that time.

applicable sentencing range is in Zone A, a sentence of incarceration is not required. *See* United States Sentencing Guideline §5C1.1 (b).

### A. <u>Incarceration</u>

Incarceration, while permissible, should not be considered lightly for an offender of Mr. Huguley's age and limited experience. Mr. Huguley committed this offense shortly after his eighteenth birthday and even now he is barely nineteen years old. He has no prior record[3], has never lived on his own or been self-supporting, and has clearly demonstrated extreme immaturity. While frustration with Mr. Huguley's misbehavior on pretrial release is understandable and appropriate, such frustration should not be the determining factor in fashioning an appropriate sentence for him.

This Court may "take judicial notice that a general prison population includes criminals of all types, young and old, dangerous, of every character. And the courts also particularly take judicial notice that it is not uncommon to find the indiscriminate mixing of hardened criminals, including sexual assaulters, with young offenders. *People v. Terry Lee Harmon*, 53 Mich.App. 482, 220 N.W.2d 212 (decided May 30, 1974)." *Cox v. Turley,* 506 F.2d 1347, 1350 (6th Cir. 1974). Courts have long recognized the impropriety of mixing young people "in jails with hardened criminals." *In re Gault*, 387 U.S. 1, 15, 87 S.Ct. 1428, 1437, 18 L.Ed.2d 527 (1967).

"The supervisors at jails are guards--not guardians. Jails hold convicted criminals and adults charged with crimes. Jails are prisons, with social stigmas. Children identify with their surroundings. They may readily perceive themselves as criminals, for who goes to jail except criminals? A jail is not a place where a truly concerned natural parent would lodge his or her child for care and guidance.

---

[3]On information and belief, Mr. Huguley has a state misdemeanor conviction that arose out of the same event as the instant offense.

A jail is not a place where the state can constitutionally lodge its children under the guise of parens patriae." *Doe v. McFaul*, 599 F.Supp. 1421, 1429 (N.D. Ohio, 1984) (quoting *D.B. v. Tewksbury*, 545 F.Supp. 896, 907 (D.Or.1982)).

"(I)t is clearly undesirable that juveniles be confined with adults." President's Commission on Law Enforcement and Administration of Justice, Challenge of Crime in a Free Society 179 (1967). "Just as courts have sometimes confused delinquency with crime, so have law enforcement officials treated juveniles not as delinquents but as criminals." *McKeiver v. Pennsylvania*, 403 U.S. 428, 560 (1971) (Douglas, J., dissenting). "Prison focus on confinement rather than therapy and education certainly cannot be the answer to preventing juveniles from growing into adult criminals." *Gesicki v. Oswald*, 336 F.Supp. 371, 378 (S.D. N.Y. 1971).

Certainly, the both the U.S. Constitution and the federal juvenile justice act prohibit imposition of a term longer than the sentence a court could impose on a similarly situated adult. *United States ex rel. Sero v. Preiser,* 506 F.2d 1115 (2nd Cir. 1974), cert. den. 95 S.Ct. 1587 (1975) (imposition of longer sentences on young adult misdemeanants than would have been imposed on them had they been adults denied equal protection); *United States v. R.L.C.*, 503 U.S. 291, 112 S.Ct. 1329, 1331 (1992) (interpreting 18 U.S.C. § 5037( c) to require equal application of the Sentencing Guidelines to juvenile offenders).

While Mr. Huguley has technically slipped into the category of "adult" and not legal "juvenile," the reality of his immaturity and limited life experience should guide this Court's decision. Several studies have documented the dangers facing young people sent to adult prisons:

> Young inmates face enormous risks upon admission into adult prisons (Ziedenberg, 2001). One study found that youths in adult prison are five times more likely to be the victim of sexual assault than youths sent to a juvenile

> institution. This study also found that youth in adult prison are twice as likely to be beaten by staff and fifty per cent more likely to be attacked with a weapon compared to youth in juvenile institutions (Fagan, Forst, and Vivona, 1989). Yet another sobering study found that the suicide rate of youths in adult jails is 7.7 times as high as the rate for youth in juvenile facilities. (Flaherty, 1980).

Olson, Jodi K., "The Waiver of Juveniles to Criminal Court: Judicial Discretion and Racial Disparity," Masters student, Department of Criminal Justice, University of Nevada - Las Vegas, Fall 2004 (attached as Exhibit A).

### B.    Probation

Probation is a "punishment." "Probation entails a 'conditional liberty.' [Although] [i]t implicates a restraint on liberty that is 'less severe than imprisonment,' . . . it can [be structured to] last longer [than the sentencing guideline range of zero to six months in this case]." *United States v. Chavez,* 204 F.3d 1305, 1311 (11th Cir. 2000)(citing *United States v. Granderson,* 969 F.2d 980, 984 (11th Cir.1992), *aff'd,* 511 U.S. 39, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994)). Further, "Congress has clearly authorized courts to impose probation as an alternative to a term of imprisonment. For misdemeanors, a court may impose a term of probation not to exceed five years." *Id*.(citing 18 U.S.C. § 3561(a), (c)(2); *United States v. Nachtigal,* 507 U.S. 1, 5 (1993)(construing probation as alternative to imprisonment); *Granderson,* 969 F.2d at 984 (probation is alternative to incarceration); *see also United States v. Unterburger,* 97 F.3d 1413, 1415 (11th Cir.1996) (offense is not severe when it is punishable by a six month maximum term of imprisonment and a maximum $10,000 fine or alternatively, by a five year probation term); *United States v. LaValley*, 957 F.2d 1309, 1312 (6th Cir.1992) (offense carrying maximum incarceration of six months, a maximum fine of $5,000 and a five year term of supervised release is petty)).

Thus, under no circumstances should a sentence of "probation" be considered non-

punishment.

### C.     Community Confinement and/or conditions of supervision

"Community confinement may be imposed as a condition of probation." *See* United States Sentencing Guideline §5F1.1. The Commentary to U.S.S.G. §5F1.1 defines "community confinement" as "a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility; and participation in gainful employment, employment search efforts, community service, vocational training, treatment, educational programs, or similar facility-approved programs during non residential hours." Mr. Huguley's defense counsel have contacted several drug rehabilitation, vocational training and community service programs regarding Mr. Huguley's eligibility for immediate enrollment.

The Commentary to U.S.S.G. §5F1.1 advises that "community confinement generally should not be imposed for a period in excess of six months," however "[a] longer period may be imposed to accomplish the objectives of a specific rehabilitative program, such as drug rehabilitation." In addition, "[t]he sentencing judge may impose other discretionary conditions of probation or supervised release appropriate to effectuate community confinement." *See* U.S.S.G. §5F1.1 . Thus, Mr. Huguley's sentence could be adjusted to allow him to fully avail himself of the these various programs.

#### 1.     Bannum Place

Community confinement includes the options of Bannum Place, the halfway house in Montgomery which accepts residents on contract with the U.S. Bureau of Prisons and U.S. Probation Office, as well as a number of alternative placements. Bannum Place requires its residents to work and to submit to frequent, random drug testing, and offers some opportunities for participation in

drug and mental health treatment. The present waiting period for a placement at Bannum Place is flexible; there is one bed available now at that facility.[4]

### 2. Job Corp

Representatives from the local Job Corp service office have indicated that Mr. Huguley would be eligible for enrollment into their program following a six month waiting period after his release from jail. Through Job Corp, Mr. Huguley will have the benefit of being removed from his current environment and placed on a residential campus located in either Montgomery or Gadsden, Alabama or in another southeastern state. These residential campuses are structured like college campuses and are designed to teach students about work and life management.

While residing on one of the Job Corp campuses, Mr. Huguley will be able to receive hands-on vocational training in one of the over thirty-one different job trades taught by Job Corp staff. Mr. Huguley will be required to spend a minimum of eight months in the program. However, he can remain in the program for a maximum of two years, a determination that will be based on how fast he masters the trade he has chosen. Mr. Huguley will also be taught computer skills, resume development, and job interview skills. In addition, Mr. Huguley will be subject to periodic and random drug testing as part of the Job Corp's no tolerance drug policy. Due to the strict nature of this policy, if Mr. Huguley fails one drug test, he will be discharged from the Job Corp Program.

Job Corp also offers aftercare assistance following graduation from the program. Specifically, should Mr. Huguley successfully complete the Job Corp Program, he would be assigned a career transition specialist whom he could contact for up to two years, for assistance with finding

---

[4] The director of Bannum Place, Clifford Coleman, has indicated that if the Court assigns Mr. Huguley to Bannum Place at his sentencing, he could accept him as a resident this week.

employment, housing, and transportation.

### 3. Drug Rehabilitation

Mr. Huguley needs to continue drug rehabilitation to permanently discontinue his use of marijuana. Staff at Bradford Health Services have indicated that Mr. Huguley can be assessed for admittance into a twenty-one day, in-house drug recovery program. Following completion of that program, Mr. Huguley will be able to receive additional services, such as aftercare services, job training, and help with securing employment. Payment for this service may be possible through Mr. Huguley's mother's insurance.

### 4. Home Detention

"Home detention may be imposed as a condition of probation or supervised release, but only as a substitute for imprisonment." *See* United States Sentencing Guideline §5F1.2. The third Application Note to U.S.S.G. §5F1.2 provides that "[t]he defendant's place of residence, for purposes of home detention, need not be the place where the defendant previously resided." It is essential that Mr. Huguley be removed from the negative influences present in Lafayette, Alabama, in order to reform his behavior. Pursuant to §5F1.2, Mr. Huguley can be placed on electronic monitoring in the home of a relative who does not reside in Lafayette, Alabama. Mr. Huguley has relatives throughout Alabama, in Opelika, Montgomery, and Birmingham. Thus, Mr. Huguley may greatly benefit from home detention with any one of his relatives living outside of the Lafayette area. His father, Chris Huguley; and other relatives have expressed a willingness to have Mr. Huguley reside with them.

  **5.**  **Community Service**

"Community Service may be ordered as a condition of probation or supervised release." *See* United States Sentencing Guideline §5F1.3.  The  U.S. Probation office routinely supervises offenders who receive a condition of "community service work" as a condition of supervision. Community service may include service to local agencies, or service on a more intensive level. Representatives from the National AmeriCorps Foundation ("AmeriCorps"), a national service organization, have indicated that Mr. Huguley is eligible for their program, as they accept applicants with misdemeanor convictions.  AmeriCorps has various programs in place in Alabama, in which volunteers build housing for the indigent, clean parks and streams, help communities respond to natural disasters, locate resources for health clinics, as well as provide other services. Upon acceptance into the AmeriCorps program, Mr. Huguley would be required to serve with the program for at least one full year. Completion of one year of full-time service will make Mr. Huguley eligible to receive an education award of almost $5,000. Through community service, Mr. Huguley will be able to learn the importance of fulfilling his civic duty and  positively contribute to society while making amends for his prior conduct.

  **6.**  **Combination of Restrictions**

In addition to the above alternatives to imprisonment, this Court has the discretion to formulate an appropriate punishment for Mr. Huguley by combining a number of restrictive measures. Any combination of halfway house confinement, home detention, jail time, community service, and/or other conditions may be imposed.

Thus, Mr. Huguley can be placed at a halfway house to be followed by home detention via electronic monitoring.  Mr. Huguley may also be placed in a halfway house, with his weekends to

be served in jail. In addition, Mr. Huguley's freedom can be restricted through electronic monitoring and/or a court-imposed curfew. In addition, the office of undersigned counsel has two licensed social workers on staff, who are also available to provide supportive services to Mr. Huguley.

### Conclusion

Mr. Huguley's achievement in passing the G.E.D. examination and obtaining a High School Equivalency Diploma while on pre-sentence release, demonstrate that Mr. Huguley is interested in furthering his education and career development. Mr. Huguley's successful completion of The Bridge, an in-patient drug recovery program, also demonstrates that he can refrain from drug use while in a structured environment. Therefore, a sentence of two weeks incarceration, followed by one year of supervised release with conditions of halfway house confinement and community service would not only meet the objectives of punishment for his actions, but may also enable Mr. Huguley to acquire the necessary skills that would deter future negative involvement with the criminal justice system.

**WHEREFORE**, the Defendant respectfully prays that these sentencing options be considered and adopted by the Court.

Respectfully submitted,

**s/Christine A. Freeman**
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Camion Q. Huguley
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

        **s/Patricia Kemp**
        **PATRICIA KEMP**
        ASB-4592-R80K
        Attorney for Camion Q. Huguley
        Federal Defenders
        Middle District of Alabama
        201 Monroe Street, Suite 407
        Montgomery, AL 36104
        TEL:   (334) 834-2099
        FAX:  (334) 834-0353
        E-Mail: patricia_kemp@fd.org

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 13, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Terry F. Moorer, Assistant United States Attorney, One Court Square, Suite 201, Montgomery, Alabama 36104; and I will provide a copy of same by telefax to Terrence Marshall and the office of U.S. Probation, One Court Square, Suite 249, Montgomery, Alabama.

      s/Christine A. Freeman
**CHRISTINE A. FREEMAN**
**TN BAR NO.: 11892**
Attorney for Camion Q. Huguley
Federal Defenders
Middle District of Alabama
201 Monroe Street , Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: Christine_Freeman@fd.org

**s/Patricia Kemp**
**PATRICIA KEMP**
ASB-4592-R80K
Attorney for Camion Huguley
Federal Defenders
Middle District of Alabama
201 Monroe Street, Suite 407
Montgomery, AL 36104
TEL:   (334) 834-2099
FAX:   (334) 834-0353
E-Mail: patricia_kemp@fd.org